UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON GENTRY,

    Plaintiff,

v.

WAYNE COUNTY, et al.,

    Defendants.
                              /

Case No. 10-cv-11714

HONORABLE STEPHEN J. MURPHY, III

**ORDER DENYING DEFENDANTS' MOTION
TO STAY PROCEEDINGS** (docket no. 12)

Deon Gentry brought this federal civil rights case against various law enforcement officials and Wayne County pursuant to 42 U.S.C. § 1983. Gentry presently has a lawsuit pending in state court as well that makes allegations sounding in tort law against Sherrif's Deputy Daniel Carmona, the key defendant in the federal case. The Court now has before it a motion by the defendants to stay these federal court proceedings[1] under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), until the state court case comes to a conclusion. In the alternative, the defendants ask the Court to stay this case under its inherent powers to control the docket and conserve judicial resources.

Abstention is the rare exception to the general rule for federal courts, which have a "virtually unflagging obligation . . . to exercise the jurisdiction given [it]." *Colo. River*, 424 U.S. at 817. The Court concludes that the federal and state cases in question here do not meet the threshold requirement under *Colorado River* for abstention. Moreover, even if the Court found the instant proceedings to be parallel with those in state court, the defendants

---

[1] Defendants Donald Watts and Richard Wolf did not join in the motion.

fail to show that considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," so strongly counsel abstention as to meet the exception to the general rule about exercising jurisdiction. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Finally, there are no exceptional circumstances in this case meriting a stay under the Court's inherent powers to manage its docket. Accordingly, the Court will deny the defendants' motion.

## BACKGROUND

On April 28, 2007, Carmona shot Gentry in the back while law enforcement officers attempted to remove Gentry from his girlfriend's apartment. Compl., Docket No. 1, at ¶¶ 25–38. The bullet severed Gentry's spinal cord, and he has permanently lost movement in his legs. *Id.* ¶ 38. On June 13, 2008, Gentry brought a lawsuit in Wayne County Circuit Court against Carmona. Defs.' Mot., Docket No. 9, at 3. That suit raised only state tort law claims. *Id.* Carmona filed a motion for summary disposition of the entire state court case after the parties conducted extensive discovery. *Id.* On February 1, 2010, the Circuit Court granted in part and denied in part Carmona's motion. *Id.* Carmona appealed that part of his motion which the court denied to the Michigan Court of Appeals, and that appeal is still pending. *Id.*

Gentry filed this lawsuit on April 27, 2010, against Carmona, Wayne County, and a variety of law enforcement officials who either allegedly instructed or supervised Carmona. Compl. at 1. All three of the claims in this case are § 1983 claims, with different theories of liability for Carmona, his supervisors and instructors, and Wayne County. *Id.* ¶¶ 58–89. Gentry believes that revelations in discovery showing a history of poor behavior by Carmona that supervisors in the sheriff's department and other agencies failed to notice

or correct created the need for a federal lawsuit. Gentry's Resp., Docket No. 11, at 3–5. The defendants claim that Gentry's federal lawsuit represents "artful pleading" designed to avoid bringing his federal claims in state court, thereby risking removal of the entire action to federal court. Defs.' Mot. at 7. Carmona's personnel file, which defendants turned over to Gentry on June 30, 2009, and Carmona's July 8, 2009 deposition revealed all of the information necessary to bring the municipal liability claims against Wayne County and Carmona's supervisors and instructors, according to the defendants. Def.'s Resp., Docket No. 12, at 1. The timing of the filing of this case, the day before the running of the statute of limitations for § 1983 actions,[2] suggests that Gentry's lawsuits resulted from strategic gambits of counsel.

## ANALYSIS

I. *Colorado River* Abstention

Under *Colorado River*, this Court has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy. *Colo. River*, 424 U.S. at 817–18; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). *Colorado River* abstention requires a two-part analysis. As a threshold matter, the Court must address the question of whether or not the two proceedings are parallel. *Romine*, 160 F.3d at 340. If the proceedings are found to be parallel, the Court next considers the balancing-test factors described in *Colorado River* to determine if abstention will actually

---

[2] April 27, 2010 was the last day Gentry could bring his § 1983 claims without losing them due to time bars. Congress did not provide for a statute of limitations when it enacted § 1983, so courts apply the statute of limitations for personal injury actions in the relevant state for such claims. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Michigan, the statute of limitations for personal injury actions is three years "after the time of the . . . injury." Mich. Comp. Laws § 600.5805(10); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

serve the end of efficient court administration. *Id.* at 340–41. The Court concludes, for the reasons set forth below, that the state and federal proceedings in question here are not parallel. In addition, even if the Court were to answer this threshold question in the affirmative, only an overwhelming showing of need can justify *Colorado River* abstention, and such need is not present here.

    A.  <u>Are the State and Federal Proceedings Parallel?</u>

State and federal court proceedings are "parallel" if they are "substantially similar." *Romine*, 160 F.3d at 340 (finding two actions were parallel when "predicated on the same allegations as to the same material facts"); *see also Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora."). Exact identity between the two cases is not required. *See Romine*, 160 F.3d at 340 (rejecting additional claims and parties in the federal-court case as a reason for not abstaining, and finding "the argument that abstention is inappropriate because the federal cause of action included parties not present in the state proceedings 'is not relevant to *Colorado River* abstention.'" (quoting *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990))).

The defendants argue that because both of Gentry's lawsuits are based on the same set of predicate facts, seek similar compensation, and were filed by the same plaintiff against the same principal defendant, they should be considered parallel proceedings. The Court does not agree that these similarities are sufficient, for two reasons. First, the theories of recovery in the two cases are different. In the typical case where *Colorado River* abstention is applied, the legal theories asserted in the two cases are more or less equivalent. For example, in *Romine*, the proceedings in both state and federal court alleged violations of federal securities law. *Romine*, 160 F.3d at 338–39; *see also*

4

*Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Penn.*, No. 06-11161, 2006 WL 2376112, at *3–4 (E.D. Mich. Aug. 16, 2006) ("If the cases are truly parallel, then the state action will be a vehicle to resolve all issues raised in the federal action."). But when the state and federal cases present different theories of recovery, courts do not generally characterize the proceedings as "parallel." *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) (state and federal cases that "each contest[ed] a different aspect" of zoning variance are not parallel proceedings); *Walbridge Aldinger*, 2006 WL 2376112, at *4 (state and federal court actions dealing with different contracts, one of which would "require finding facts beyond those implicated in the state action," were not parallel, and "the existence of different theories of recovery in the federal and state cases militates against a finding of parallelism").

In this case, Gentry's theories of recovery in the state and federal court actions have completely different legal bases — the state action raises only state law tort claims, while the federal action raises nothing but federal civil rights claims. In response, the defendants argue that Gentry "cannot proceed on the municipal and/or supervisor liability claims unless he first proves that Deputy Carmona violated his constitutional rights," but the defendants do not acknowledge that Gentry does not have to prove a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" to win his state court case. 42 U.S.C. § 1983. Rather, he has to prove that Carmona committed either an intentional tort or gross negligence. *See* Gentry's Resp., Docket No. 11, at 2. There are serious differences between the standards of proof for state tort claims and federal civil rights that the Court would be remiss to overlook. *See generally Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315–16 (E.D. Mich. 1994) (declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over a number of state tort claims — including assault and

5

battery — which the plaintiff brought alongside a § 1983 claim due to differences between the requisite mental state, relevant immunity provisions, vicarious liability standards, and recoverable damages in state tort law and federal civil rights law).

While it is conceivable that Gentry could have brought his § 1983 claims in state court to recover punitive damages, the claims Gentry *could* have brought are irrelevant to the parallel proceedings analysis. Rather, the Court must look at the cases as Gentry filed them. *See Baskin*, 15 F.3d at 572 ("[I]n deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues *actually raised* in the state court action, not those that might have been raised."). The defendants cite no case in which a court deemed two actions "parallel" that lacked any symmetry in the legal arguments made by the plaintiff, and the Court will not make such an extension here.

Second, the Court does not accept defendants' argument that the similarities in facts and remedies between the two cases compel a finding of parallelism. The state lawsuit names Carmona as the only defendant, and addresses his role as a tortfeasor in Gentry's shooting. By contrast, the federal lawsuit makes broader accusations about the practices of Carmona's instructors and supervisors, who allegedly put Carmona in a position where he would be a danger to the community. The remedies Gentry seeks in his federal case also reflect this difference: while both suits seek money damages, only the federal civil rights case permits punitive damages. *Compare City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (holding that punitive damages are available against individuals in a § 1983 action, but not against municipal defendants) *with in re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989) ("In Michigan, the courts of that State refuse to allow the recovery of punitive damages."). Defendants argue that the remedies

6

sought arer more of a distinction than a difference, but the standards and rationales for awarding punitive and compensatory damages are so different that some judges actively avoid trying §1983 claims alongside state tort claims due to the risk of juror confusion. *See Padilla*, 867 F. Supp. at 1316 (pointing to differences between punitive and compensatory damages as a "compelling reason" for denying pendant jurisdiction over state law tort claims when § 1983 serves as the basis for federal jurisdiction). Thus, even on those elements where there are admittedly similarities between these two cases, the Court has difficulty concluding that these similarities are "substantial."

In summary, state and federal actions are not "parallel" unless they are *substantially* similar in the legal theories they pursue, the facts they address, and the remedies they seek. In this case, the legal theories in the two cases are nothing alike, and the similarities in facts and remedies, while present, are not substantial. The Court cannot conclude that these cases are "parallel," and *Colorado River* abstention is therefore inappropriate.

B. <u>Would Abstention Be in Accord With Principles of Wise Judicial Administration?</u>

Even if the Court were to find that these proceedings are parallel, the Court does not agree with the defendants that this is a case where abstention would be appropriate. In *Colorado River* and its progeny, the Supreme Court set out a series of factors courts ought to consider when weighing abstention for reasons of "wise judicial administration." These factors, as recognized by the Sixth Circuit in *Romine*, are:

(1) Whether the state court has assumed jurisdiction over any res or property;
(2) Whether the federal forum is less convenient to the parties;
(3) Avoidance of piecemeal litigation;
(4) The order in which jurisdiction was obtained;
(5) Whether the source of governing law is state or federal;
(6) The adequacy of the state court action to protect the federal plaintiff's rights;
(7) The relative progress of the state and federal proceedings;
(8) The presence or absence of concurrent jurisdiction.

7

*Romine*, 160 F.3d at 340–41. Despite the appearances, these factors "do not comprise a mechanical checklist." *Id.* at 341. Rather, "the decision whether to [stay] a federal action because of parallel state-court litigation . . . rest[s] . . . on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The defendants concede that two of the eight factors suggest abstention is inappropriate. First, there is no "res or property" in dispute in this case. Second, there are no concerns about convenience raised by the choice of forum, as the Wayne County Circuit Court is only a few blocks away from the Theodore Levin United States Courthouse in Detroit. Nevertheless, it is the defendants' contention that all of the remaining *Colorado River* factors strongly counsel abstention, or, at the very least, do not counsel against abstention as strongly as it might appear on the surface.

The three factors of the *Colorado River* test that most strongly counsel abstention in this case are the desire to avoid piecemeal litigation, the relative progress of the proceedings in state and federal court, and the order in which the state and federal courts took jurisdiction over these claims. Gentry waited for nearly two years after he filed his state court suit, and ten months after receiving the documents that led to his municipal and supervisory civil rights claims, before filing his federal case. By this juncture, discovery was complete in the state court case, and the court had ruled upon a motion for summary disposition. The case is now on appeal. The conspicuous timing of filing of the federal case by Gentry — the day before the statute of limitations on a § 1983 claim would have run — creates a strong inference that Gentry brought his lawsuits in stages for strategic purposes.. The Court can conclude that all three of the above factors weigh significantly

8

in favor of the defendants' request for abstention.³ Nevertheless, while the Sixth Circuit has "focus[ed]" on the "relative progress of the state and federal proceedings" as an important factor in *Colorado River* analysis that often "justifies abstention," this case has features not present in other cases that take the Court in a different direction.⁴ *Bates v. Van Buren Twp.*, 122 F. App'x 803, 807 (6th Cir. 2004).

The defendants make strenuous efforts to turn one of the considerations that weighs against them — the exclusively federal-law basis for Gentry's suit in federal court — into a positive, by focusing on the state courts' concurrent jurisdiction over § 1983 claims. The defendants must concede that, under Supreme Court precedent, "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction. *Moses H. Cone*, 460 U.S. at 26. But in weighing the *Colorado River* factors, the Supreme Court also instructs that "the source-of-law factor has less significance . . . [where] the federal courts' jurisdiction to enforce [the law] is concurrent with that of state courts." *Moses H. Cone*, 460 U.S. at 25; *see also Romine*, 160 F.3d at 342 (holding that state courts' concurrent jurisdiction over federal securities claims "seriously diminished" the importance of this factor). State courts have concurrent jurisdiction over § 1983 claims.

---

³ In *Romine*, the state court case was already well into the discovery phase when the district court decided to stay the federal action. *Romine*, 160 F.3d at 342. In addition, the state court cases were filed months prior to the filing of the federal action. *Id. Romine* held that this delay, combined with the progress made in the state court, "counsel[ed] very strongly in favor of abstention." *Id.* The delay in this case is even greater than the delay in *Romine*.

⁴ In arguing these factors, the defendants also warn the Court that if Carmona wins in the Michigan Court of Appeals, claim preclusion principles might require the Court to dismiss this case because Gentry did not raise his § 1983 claims with reasonable diligence in the circuit court. This argument is speculative. The defendants' brief does not sufficiently discuss the likelihood of success on appeal, or the law that justifies their conclusions about the effects such a ruling would have on this case. While the defendants have every right to move to dismiss this case at a later date if the Michigan Court of Appeals ruling favors them, the Court finds that the present objection is premature.

*Martinez v. California*, 444 U.S. 277, 284 n.7 (1980). The defendants argue that the deliberate omission of § 1983 claims by Gentry, combined with the availability of jurisdiction over those claims in state court, means that the source-of-law factor should be weighed heavily in favor of the *defendants*, rather than Gentry.

While the Court must take the reality of concurrent jurisdiction into account, the defendants' argument reaches too far. First, the argument applies *Moses H. Cone* in in illogical manner. Concurrent jurisdiction may *alleviate* concerns about surrendering jurisdiction, but the presence of federal law "*always*" militates against abstention. *Moses H. Cone*, 450 U.S. at 26 (emphasis added). Second, concurrent jurisdiction is less meaningful in this case because of the unique character of § 1983. Unlike the McCarren Amendment (*Colorado River*), the Federal Arbitration Act (*Moses H. Cone*),[5] or federal securities law (*Romine*), § 1983 was expressly created to "open[ ] the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, 407 U.S. 225, 239 (1972); *see also Epps v. Lauderdale Cnty.*, 139 F. Supp. 2d 859, 865 (W.D. Tenn. 2000) ("[Section] 1983 is substantively designed to interfere with state law and protocols, not defer to [them]."). The drafters of § 1983 intended to *avoid* state courts that, at the time of enactment, "were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights."

---

[5] In *Moses H. Cone*, the Court rejected the argument that because the Federal Arbitration Act ("FAA") is an "anomaly" in that it does not provide an independent basis for federal court jurisdiction, the "source of law" factor was less meaningful under *Colorado River*. *Moses H. Cone*, 450 U.S. at 26 n.32 ("[A]lthough enforcement of the Act is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate."). If even a statute with as "weak" a jurisdictional claim as the FAA is a "major consideration weighing against surrender," surely a § 1983 claim cannot be casually thrown to the wayside merely because the state court is capable of hearing it. *Id.* at 26.

*Mitchum*, 407 U.S. at 240. The exclusively federal nature of the claims in Gentry's federal case, along with the strongly federal character of § 1983 actions, largely cancels out the mitigating effect of concurrent jurisdiction, and thus, the factor weighs strongly against abstention.

In addition, consideration of the adequacy of the state court proceeding — factor six in the *Romine* list — suggests a stay is unwise. In the usual *Colorado River* abstention case, the federal law claims are before both the state and federal courts, and it is presumed that both systems are fully equipped to protect a plaintiff's federal rights, including constitutional rights. *See, e.g.*, *Garter Belt, Inc. v. Van Buren Twp.*, 66 F. App'x 612, 615 (6th Cir. 2003) (staying a case under *Colorado River* on assumption that state court was equally competent to federal court in considering First Amendment challenge to ordinance regulating clubs that feature nude dancing). That consideration is inapplicable here, because only the federal case contains federal constitutional claims, and it is not the Court's role to second-guess how Gentry structured his lawsuits. For much the same reasons that drove the Court's analysis of the "parallel proceedings" question, the Court finds that the differences between Gentry's federal and state cases suggest that the adequacy consideration weighs against abstention. *See Baskin*, 15 F.3d at 572 (calling the "parallel proceedings" factor and the "availability of complete relief" or "adequacy" factor "identical," "for all practical purposes").

Viewed as a whole, the *Colorado River* factors which counsel for and against abstention are in equipoise. The Court finds the relative timing of the two lawsuits to be nettlesome, and under different circumstances, a stay might be appropriate on the basis of the lengthy delay between filings. But there are also important considerations pushing against abstention in this case, including the inadequacy of the state court proceedings; the

11

distinctively federal character of the substantive law in the federal case; the presence of nothing but federal claims in the federal case; and the absence of other compelling reasons to stay the case, such as inconvenience to the parties or state-court jurisdiction over a "res or property" in dispute. This relative equality of factors actually makes the decision to abstain appropriate, because there cannot be *Colorado River* abstention in a close case. The Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction," but to "ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25–26. The presumption of the Court must be "heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. Because the "clearest of justifications" is not present here, the Court concludes that a stay pursuant to *Colorado River* would be inappropriate in this case.

II. Inherent Power to Stay Cases

In the alternative, the defendants ask the Court to use its "inherent power to stay proceedings" and 'to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants'" to stay the matter. *Stone v. INS*, 514 U.S. 386, 411 (1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The Court finds no need to stay the case. As explained above, the state court and federal court cases here do not "seek the same relief based upon the same factual allegations" as the defendants claim, and there is no reason they cannot be heard simultaneously. Defs.' Mot. at 12. In addition, the Court finds that neither of the two district-court cases cited by the defendants provide a persuasive justification for staying this action. In both cases, the moving party showed that a decision in the state court would completely wipe out the basis of the federal case; and no similar showing has not been made here. *See Summa Four, Inc. v. AT & T*

*Wireless Servs., Inc.*, 994 F. Supp. 575, 577 (D. Del. 1998) (granting stay of federal patent case while waiting for determination in state court about who owned patent in suit, despite finding that cases were not "parallel proceedings" under *Colorado River*); *Lerco Corp. v. Haley*, 597 F. Supp. 517, 518–19 (W.D. Ky. 1983) (same).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the defendants' motion to stay this case (docket no. 9) is **DENIED**.

**SO ORDERED**.

                        s/Stephen J. Murphy, III
                        STEPHEN J. MURPHY, III
                        United States District Judge

Dated: November 22, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 22, 2010, by electronic and/or ordinary mail.

                        Alissa Greer
                        Case Manager